JOHN C. BROOKS, COMMISSIONER OF LABOR OF NORTH CAROLINA, PETITIONER-APPELLEE v. BCF PIPING, INC., RESPONDENT-APPELLANT

No. 9110SC1000

(Filed 16 February 1993)

1. **Administrative Law and Procedure § 67 (NCI4th)— standard of review—error of law—de novo review—sufficiency of evidence—whole record test**

The Court of Appeals applied a de novo review in an occupational health and safety action to the issue of whether the trial court erred in ruling that BCF's reliance on a customer's qualified electrician was insufficient as a matter of law, and applied a whole record test to the issue of whether the court erred by ruling that BCF failed to train its employees to recognize the hazards associated with their working environment. When the issue on appeal is whether a state agency erred in interpreting a statutory term, an appellate court may freely substitute its judgment for that of the agency and employ de novo review. A review of whether an agency decision is supported by sufficient evidence requires the court to apply the whole record test and the whole record test is also applied when the court considers whether an agency decision is arbitrary or capricious. N.C.G.S. § 150B-51.

Am Jur 2d, Administrative Law §§ 697-705.

2. **Labor and Employment § 26 (NCI4th)— North Carolina Occupational Health and Safety Act—electrocution—reliance on customer's electrician**

The trial court did not err in an action arising under the North Carolina Occupational Safety and Health Act by ruling that defendant BCF's reliance on a customer's qualified electrician was insufficient as a matter of law where BCF was hired to perform refurbishing services in an area of Stowe-Pharr Mills' plant; BCF delivered a welding machine to the job site to be used by BCF's employees; it was inspected by a BCF employee prior to being delivered to the site and it was determined that the welder was properly wired internally and that its grounding circuit had been properly wired; the standard practice throughout the industry was to deliver the machine without an end plug because of various plug con-

BROOKS v. BCF PIPING

[109 N.C. App. 26 (1993)]

figurations; the plug was wired to the power cord at the site by an employee of Stowe-Pharr; and a Stowe-Pharr employee was electrocuted when he touched the welding machine and another piece of grounded equipment while Stowe-Pharr employees used the machine to work on a project totally unrelated to BCF's work. Although it was proper and customary to send the male end plug and allow someone else to attach it, BCF's reliance on Stowe-Pharr's electrician to properly ground machinery and protect its employees from the existence of a hazard is unreasonable pursuant to the NCOSH Act which imposes a specific duty on BCF to inspect the arc welder to make sure it is properly grounded. Such a statutory duty is nondelegable. N.C.G.S. § 95-129(1); N.C.G.S. § 95-127(18).

**Am Jur 2d, Plant and Job Safety §§ 34 et seq.**

3. **Labor and Employment § 26 (NCI4th) — NCOSH — welding machine — plug installed by customer's electrician — duty to check grounding**

The trial court did not err in an action under the North Carolina Occupational Safety and Health Act by holding that reasonable diligence required BCF to train its employees to check the frame of an arc welder to insure that it was properly grounded. There is ample evidence in the whole record to conclude that BCF's employees were not properly trained to recognize and avoid hazards. The failure of BCF to train its employees to use a simple procedure to check the arc welder is indicative of BCF's failure to train its employees to recognize a hazard and its failure to instruct its employees on a specific regulation. The procedure to insure the safety of respondent's employees is a simple test that would not create chaos in the industry.

**Am Jur 2d, Plant and Job Safety §§ 34 et seq.**

Appeal by defendant from judgment entered 26 June 1991 by Judge A. M. Brannon, in Wake County Superior Court. Heard in the Court of Appeals 15 October 1992.

*Attorney General, Lacy H. Thornburg, by Associate Attorney General H. Alan Pell, for plaintiff-appellee.*

*Smith Helms Mulliss & Moore, by James G. Middlebrooks, for defendant-appellant.*

JOHNSON, Judge.

In 1989, Stowe-Pharr Mills (hereafter Stowe-Pharr) in McAdenville, North Carolina, hired BCF Piping, Inc. (hereafter BCF) to perform refurbishing services in one area of its plant. BCF delivered a welding machine to the job site to be used by BCF's employees. Before the welding machine was delivered to Stowe-Pharr, it was inspected by a BCF employee, Mr. Ellis. Mr. Ellis determined that the welder was properly wired internally and that its grounding circuit was properly wired.

The standard practice between BCF and Stowe-Pharr was for BCF to deliver the welding machine without a male end plug. It was not contested that this is the standard practice throughout the industry because of the various plug configurations.

At the site, the plug was wired to the power cord by Bill Fiddler, an employee of Stowe-Pharr. On Saturday, 27 May 1989, Stowe-Pharr employees used this particular welding machine to work on a project totally unrelated to BCF's work. A Stowe-Pharr employee was electrocuted when he touched both the welding machine and another piece of grounded equipment.

After an investigation by Safety Compliance officer, Mike Peak, BCF was issued a Citation for a violation of 29 CFR § 1926.21(b)(2) (1992), for failure to instruct each employee in the recognition and avoidance of unsafe conditions, and the regulations applicable to control or eliminate any hazards; a violation of 29 CFR § 1926.351(c)(5) (1992), for failure to ground the frame of an arc welder; and a second violation of 29 CFR § 1926.351(c)(5), for failure to check the grounding circuit of an arc welder, so as to ensure that the circuit between the ground and the grounded power conductor had resistance low enough to permit sufficient current to flow to cause the fuse or circuit breaker to interrupt the circuit.

BCF contested the Citation set forth above and prevailed in a 25 April 1990 hearing before the Administrative Law Judge (hereafter ALJ). The Commissioner petitioned the North Carolina Safety Health and Review Board (hereafter Board). After hearing evidence and hearing the arguments of counsel, the Board concluded that the ALJ's order dismissing the Citation should be affirmed. Pursuant to North Carolina General Statutes § 95-141 (1985) and North Carolina General Statutes § 150B-43 (1991), the Commissioner sought judicial review before the Superior Court of Wake

County. After considering arguments and briefs, Judge Brannon reversed the order of the Board dismissing the Citation; and held that the "three serious violations contained [in the Citation are] affirmed in all respects." BCF gave timely notice of appeal to this Court.

[1]  This case is governed by the North Carolina Administrative Procedure Act, North Carolina General Statutes § 150B-1 (1991) which establishes a uniform system of administrative rule making and adjudicatory procedures for agencies. Accordingly, the applicable scope of judicial review is set forth in North Carolina General Statutes § 150B-51 (1991), which governs the judicial appeal from agency decisions in contested matters:

> The Court reviewing a final decision may affirm the decision of the agency or remand the case for further proceedings. It may reverse or modify the agency's decision if the substantial rights of the petitioner have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon lawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Unsupported by substantial evidence admissible under G.S. 150B-29 (a), 150B-30, or 150B-31 in view of the entire record as submitted; or
>
> (6) Arbitrary or capricious.

"The proper standard to be applied depends on the issues presented on appeal. The nature of the contended error dictates the applicable scope of review." *Utilities Comm. v. Oil Company*, 302 N.C. 14, 21, 273 S.E.2d 232, 236 (1981).

Our courts have held that if it is alleged that an agency's decision was based on an error of law, then a de novo review is required. *Brooks, Comr. of Labor v. Grading Co.*, 303 N.C. 573, 281 S.E.2d 24 (1981). "When the issue on appeal is whether a state agency erred in interpreting a statutory term, an appellate court may freely substitute its judgment for that of the agency and employ de novo review." *Id.* at 580-81, 281 S.E.2d at 29, *quoting*

*Savings and Loan League v. Credit Union Comm.*, 302 N.C. 458, 465, 276 S.E.2d 404, 410 (1981). A review of whether an agency decision is supported by sufficient evidence requires the court to apply the whole record test. *Thompson v. Board of Education*, 292 N.C. 406, 233 S.E.2d 538 (1977). The whole record test is also applied when the court considers whether an agency decision is arbitrary or capricious. *High Rock Lake Assoc. v. Environmental Management Comm.*, 51 N.C. App. 275, 276 S.E.2d 472 (1981).

The issues before this Court are (1) whether the trial court erred in ruling that BCF's reliance on the plant's qualified electrician was insufficient as a matter of law; and (2) whether the trial court committed reversible error in ruling that BCF failed to train its employees to recognize the hazards associated with their working environment.

In recognition of the issues, we will apply a de novo review for the first assignment of error and the "whole record test" for the second assignment of error.

The whole record rule requires the court, in determining the substantiality of evidence supporting the Board's decision, to take into account whatever in the record fairly detracts from the weight of the Board's evidence. Under the whole evidence rule, the court may not consider the evidence which in and of itself justifies the Board's result without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.

*Thompson*, 292 N.C. at 410, 233 S.E.2d at 541.

[2] By BCF's first assignment of error, it contends that the trial court erred in ruling that BCF's reliance on the plant's qualified electrician was insufficient as a matter of law. The Commissioner's evidence, however, indicated that BCF had a specific non-delegable duty to inspect the arc welder, make sure it was grounded properly and to use reasonable diligence in protecting the safety and welfare of its employees. We find the ALJ and the Board were erroneous in their application of the law to the facts of this case.

North Carolina General Statutes § 95-126 (1989) is the article known as the North Carolina Occupational Safety and Health Act (hereafter NCOSH Act). This Act provides employers with certain rights as well as imposing certain duties which include but are not limited to those listed under North Carolina General Statutes

§ 95-129 (1989). North. Carolina General Statutes § 95-129 (1) provides that "[e]ach employer shall furnish to each of his employees conditions of employment and a place of employment free from recognized hazards that are causing or are likely to cause death or serious injury or serious physical harm to his employees[.]" However, North Carolina General Statutes § 95-127(18) (1989) provides in pertinent part that an employer will be held liable for a serious violation pursuant to the Act ". . . unless the employer did not know, and could not, with the exercise of reasonable diligence, know of the presence of the violation."

The general rule as to employer culpability for safety violations is that each employer is responsible for the safety of his employees. *Anning-Johnson Co.*, 1975-1976 CCH OSHD ¶ 20,690 (1976); *Grossman Steel & Aluminum Corp.*, 1975-1976 CCH OSHD ¶ 20,691 (1976). The rule has been modified in cases involving multi-employer work sites. An employer is expected to make reasonable efforts to detect and abate any violation of safety standards of which it is aware and to which its employees are exposed despite the fact that the employer did not commit the violations. *Id.*

BCF cited several multi-employer work site cases in support of its contention that its reliance on a third party was sufficient as a matter of law. In *Brooks v. L. P. Cox Co. of Concord, Inc.*, 2 NCOSHD 836 (1986), L. P. Cox acted as a general contractor and hired a subcontractor to operate an oil-kettle to prepare a waterproofing compound. A ventilating hose clogged, ultimately causing the kettle to explode. The Hearing Examiner ruled L. P. Cox had not violated OSHA regulations because (1) the defect was not open and obvious; (2) there was no evidence that L. P. Cox knew of the hazardous condition created by the subcontractor; and (3) it had reasonably relied on the subcontractor to operate the oil-kettle. Similarly, in *Brooks v. Piping Plumbing Mechanical Contractors, Inc.*, 2 NCOSHD 1022 (1987), the Hearing Examiner ruled that a plumbing contractor's reliance on the architect's assurance that all asbestos had been removed was reasonable and that the plumber, therefore, was not liable for the asbestos that was not removed from the job site; and in *4 G Plumbing & Heating, Inc.*, 1978 OSHD CCH ¶ 22,658 (1978), the federal Review Commission concluded that a plumbing contractor reasonably relied on electrical receptacles being properly grounded by a subcontractor. The Review Commission held that the contractor who did not create or control the noncomplying condition may defend against the citation on

the ground that he neither knew, nor with the exercise of reasonable diligence could have known, that the condition was hazardous.

The ALJ and the Board concluded that pursuant to the above mentioned cases, BCF's duties to ground the arc welder and to inspect the equipment are delegable to a third party, here Stowe-Pharr. They also concluded that there was reasonable reliance by BCF under the circumstances, and that BCF had no actual knowledge nor reasonably should have had such knowledge of the hazard.

The multi-employer work site cases, however, cited by BCF, the ALJ and the Board are distinguishable from the case *sub judice* for the following reasons: the work site where the accident occurred did not comprise a multi-employer work site setting; the employers, in the above mentioned cases, neither created nor controlled the hazard involved; the safety of the employers' workers was not affected; and the cases did not involve a specific standard, as those at issue, which places a specific duty on an employer to inspect his equipment to insure its safe use by its employees.

In *4 G Plumbing & Heating, Inc.*, one of the cases cited by BCF, the federal Review Commission provided a significant factor which would alter their determination in finding the employer not responsible for the violation. The federal Review Commission stated:

> Respondent did not create the hazard; the receptacles were installed by the electrical contractor. Nor did respondent control the hazard such that it had the means to rectify the noncomplying condition in the manner contemplated by the standard; . . . Respondent did not know of the existence of the open ground; it was a non-obvious hazard detectable only through the use of a testing device. Therefore, respondent can be found in violation only if, in the exercise of reasonable diligence, it was required to test the electrical receptacles for proper grounding before using them.

*4 G Plumbing & Heating, Inc.*, 1978 OSHD CCH at p. 27,340. Thus, the instant case involves the very facts which would have resulted in the federal Review Commission finding the employer responsible.

In the case *sub judice*, BCF controlled the situation in which the violation occurred and had a specific duty under the NCOSH Act to know whether the arc welder was properly grounded, therein insuring the safety of its workers who used the arc welder in

day to day operations. "When an employer is under a statutory duty and then entrusts its performance to his agent, he becomes responsible for the failure of that agent to comply with the law." *Lebanon Lumber Co.*, 1971-1973 OSHD CCH ¶ 15,111, at p. 20,179, *aff'd*, 1971-1973 OSHD CCH ¶ 15,530 (1973). "The effectiveness of this particular safety standard would be nullified and the manifest intent of the Act defeated if an employer could delegate a duty clearly enjoined upon him to another." *Id.*

BCF further argues that it could not have known of the violation and that it exercised reasonable diligence by having a reputable electrician check the machinery. We disagree.

"Whether or not a hazard exists is to be determined by the standard of a reasonably prudent person. Industry custom and practice are relevant and helpful but are not dispositive. If a reasonable and prudent person would recognize a hazard, the industry cannot eliminate it by closing its eyes." *Brooks, Com'r. of Labor v. Rebarco, Inc.*, 91 N.C. App. 459, 464, 372 S.E.2d 342, 345 (1988).

BCF was hired by Stowe-Pharr to provide welding services. The equipment that was improperly wired was owned by BCF, placed on the work site by BCF employees and was to be used by BCF's employees. Although it was proper and customary to send the male end plug and allow someone else to attach it, BCF's reliance on the Stowe-Pharr's electrician to properly ground machinery and protect its employees from the existence of a hazard is unreasonable pursuant to the NCOSH Act which imposes a specific duty on BCF to inspect the arc welder to make sure it is properly grounded. We believe that such a statutory duty is nondelegable.

This is not a case where an employer is not aware of the hazards of a particular situation. BCF was aware that the equipment that it used in its business utilized high voltages of electricity. BCF had someone check the internal wires before the equipment was dispersed to the work site but failed to have someone check the machinery at the site to make sure it was properly grounded. BCF's witness testified that BCF relied upon the company that had contracted with it for such services to have someone attach the male plug and at the very least, implied, if not directly stated, that BCF generally had no knowledge of who actually attaches the plug. Although it was an employee of Stowe-Pharr who was fatally injured, the employees of BCF were exposed to the same

dangerous condition that killed the Stowe-Pharr employee the entire week before the incident occurred. A reasonable effort to abate this potentially dangerous situation could have been achieved by having someone inspect the machinery after installation but before use by any employees. BCF had a non-delegable duty to inspect the grounding circuit and thereby protect the safety and welfare of its employees.

The NCOSH Act and public policy dictate that BCF be held responsible for its failure to make working conditions safe for its employees. BCF, with total disregard for NCOSH Act, delegated such a serious task as checking the grounding wire which would expose its employees to a hazardous condition to a third party. If an employer is allowed to "contract" away his responsibility in providing a safe workplace, the effectiveness of the safety standards employed by the legislative Act would be drastically diminished.

We are not seeking by this decision to impose strict liability on employers as BCF suggests. Instead, we are enforcing the regulations as stated pursuant to the NCOSH Act. Its primary purpose is to keep conditions in the workplace safe for workers. This purpose cannot possibly be accomplished where employers are allowed to delegate to a third party a specific duty promulgated under the Act that is designed to protect the safety of workers. Where an employer, on a regular basis, is not aware of the reputation of the electrician who grounds equipment emitting dangerous currents of electricity, this Court cannot ignore such blatant disregard for the safety of employees.

[3] BCF lastly contends that the Superior Court erred in ruling that reasonable diligence required BCF to train its employees to check the frame of the arc welder to insure that it was properly grounded. We disagree.

Contrary to BCF's assertion, there is ample evidence in the "whole record" to conclude that BCF's employees were not properly trained to recognize and avoid hazards. The failure of BCF to check the grounding circuit results directly from its reliance on the training and experience of a third party agent. BCF is required to ensure that the frame of the arc welder is grounded. The failure of BCF to train its employees to use a "simple procedure" to check the arc welder is indicative of BCF's failure to train its employees to "recognize a hazard" and its failure to instruct its employees on a specific regulation.

**BROOKS v. BCF PIPING**

[109 N.C. App. 26 (1993)]

BCF further argues that it is unreasonable for the trial court to expect it to train each of its welders to be electrician's apprentices when it can rely on an experienced electrician. It cites to support its argument *Brooks v. L. P. Cox Co., Inc.*, 2 NCOSHD 637 (RB 1985), *aff'd*, 2 NCOSHD 645 (Sup. Ct. 1987), where the Review Board held that a concrete subcontractor was not responsible for a violation created by a structural engineer. The Review Board stated that respondent should have been able to reasonably rely on a professional and that to hold that the subcontractor was required to hire its own structural engineer to check the structural design prepared by a licensed professional would cause chaos in the industry.

This Court finds, however, that the procedure to insure the safety of respondent's employees is a simple test that would not create chaos in the industry but instead, prevent senseless accidents as in the case before us. The record reveals that the test could be performed with a simple OHM/Volt meter by any individual who has some training or experience with electrical equipment. Employees of BCF who would operate welding machines could perform such tests given access to an OHM/Volt meter and some instructions. Although BCF has an electrician who did a check on the machinery before it left BCF and when it returned from a work site to BCF, it did not provide its own personnel to inspect the equipment at the site and see if the machinery was properly grounded.

Based on the law and the evidence presented, we find the lower court properly reversed the decision of the Board. We affirm.

Judges COZORT and LEWIS concur.