WILLIE SPAULDING, Plaintiff v. HONEYWELL INTERNATIONAL, INC. FORMERLY KNOWN AS ALLIEDSIGNAL, INC., HOLTRACHEM MANUFACTURING COMPANY LLC, HOLTRACHEM GP, INC., BRUCE DAVIS, and HERB ROSKIND, Defendants

No. COA06-1221

(Filed 3 July 2007)

**1. Corporations— LLC member—no derivative liability**

The trial court properly granted summary judgment for defendant Honeywell on claims arising from exposure to toxic chemicals at a chemical plant. Defendant did not have derivative liability for the acts of the LLC of which it was a member; N.C.G.S. § 57C-3-30(a) is clear that mere participation in the business affairs of a limited liability company by a member is insufficient standing alone to hold the member independently liable for harm caused by the LLC.

**2. Workers' Compensation— exclusivity provisions—liability of LLC member-duty owed by LLC**

Defendant Honeywell was protected by the exclusivity provisions of the Workers' Compensation Act in an action for exposure to toxic chemicals at a manufacturing plant owned by an LLC of which it was a member. Honeywell neither promised nor assumed an independent duty to plaintiff; the LLC, not Honeywell, owed a nondelegable duty to provide a safe workplace.

**3. Employer and Employee— workplace safety—LLC member—no independent duty**

Defendant Honeywell, who was not plaintiff's employer, did not owe plaintiff an independent duty to provide for workplace safety through Honeywell's alleged liability under environmental statutes.

SPAULDING v. HONEYWELL INT'L, INC.

[184 N.C. App. 317 (2007)]

Appeal by plaintiff from orders entered 23 September 2005 and 4 May 2006 by Judge John R. Jolly, Jr., in New Hanover County Superior Court. Heard in the Court of Appeals 4 June 2007.

*Hartzell & Whiteman, L.L.P., by J. Jerome Hartzell; Law Office of Thomas N. Barefoot, P.A., by Thomas N. Barefoot; and Twiggs, Beskind, Strickland & Rabenau, P.A., by Howard Twiggs and Donald H. Beskind, for plaintiff-appellant.*

*Smith Moore LLP, by J. Donald Cowan, Jr., and Jeri L. Whitfield; and King & Spalding LLP, by J. Kevin Buster, Richard A. Schneider, and Michael R. Powers, for defendant-appellee Honeywell International, Inc.*

*No brief filed for defendants-appellees HoltraChem Manufacturing Company LLC, HoltraChem GP, Inc., Bruce Davis, and Herb Roskind.*

TYSON, Judge.

Willie Spaulding ("plaintiff") appeals from order entered granting Honeywell International, Inc. ("Honeywell"), formerly known as AlliedSignal, Inc. ("AlliedSignal"), HoltraChem Manufacturing Company LLC ("HMC LLC"), HoltraChem GP, Inc. ("HoltraChem"), Bruce Davis ("Davis"), and Herb Roskind's ("Roskind") (collectively, "defendants") motions for summary judgment. Plaintiff also appeals from order entered, which concluded the reports and related materials prepared by Environmental & Safety Services, Inc. ("ESS") are privileged. We affirm.

I. Background

In 1962, Honeywell, formerly known as AlliedSignal, built the Acme Plant ("the plant") in Riegelwood, North Carolina to produce "chlor-alkali" chemical products for the paper industry and other customers. Honeywell owned and operated the plant from 1962 until 1979.

On 14 December 1979, Honeywell sold the plant to Linden Chemicals and Plastics, Inc. ("Linden"). As part of the terms of sale, Linden executed a promissory note to Honeywell. Linden subsequently changed its corporate name to Hanlin GP, Inc. ("Hanlin").

In 1989, Hanlin failed to make timely payments under the terms of the promissory note to Honeywell. Honeywell agreed to give Hanlin credit on its indebtedness for any environmental remediation and

SPAULDING v. HONEYWELL INT'L, INC.

[184 N.C. App. 317 (2007)]

projects Hanlin funded that reduced Honeywell's future liability under environmental laws. Hanlin eventually declared bankruptcy, but continued to operate the plant as a debtor-in-possession.

In 1992, HoltraChem, a distributor of chemicals including chloralkali products, approached Honeywell about forming a business entity to purchase the plant and proposed an agreement to Honeywell. If Honeywell agreed to indemnify HoltraChem against past environmental liabilities for which Honeywell was responsible, the two companies would form a new company to operate and share profits from the plant. Honeywell agreed to the transaction.

### A. Formation of HMC LLC

In 1993, the North Carolina General Assembly enacted the North Carolina Limited Liability Act, N.C. Gen. Stat. 57C-1-01, *et seq.* On 23 November 1993, Honeywell and HoltraChem formed HMC LLC as a manager-managed limited liability company. HoltraChem, Honeywell, and Hanlin were the named members of HMC LLC. Davis served as HMC LLC's manager. In 1994, Hanlin sold the plant to HMC LLC in a transaction approved by the bankruptcy court.

On 7 April 1994, the members entered into an operating agreement which granted the members certain rights to participate in the management of HMC LLC with respect to budgetary and other matters. As manager, Davis was vested with "full and complete" authority to manage HMC LLC's day-to-day affairs, including the plant. HMC LLC operated the plant as the sole employer from 1994 until the plant closed in 2000.

Plaintiff worked at the plant from 1987 to 2000. Plaintiff and sixty-four other former employees of the plant alleged they were injured in the workplace due to exposures to mercury, chlorine gas, and other hazardous materials.

### B. Present Claims

On 17 January 2002, plaintiff instituted this action and asserted claims for: (1) civil conspiracy; (2) employer liability; (3) aiding and abetting; (4) duty to control; (5) negligent undertaking; (6) ultrahazardous activity; and (7) fellow employee liability. In September 2004, all defendants moved for summary judgment. On 23 September 2005, defendants' motions for summary judgment were granted against all plaintiffs on all claims.

Each of the sixty-five plaintiffs timely noticed appeal to this Court. This Court determined that briefing and argument should take

place only for plaintiff's appeal. The remaining sixty-four appeals were stayed pending the outcome of this appeal.

## II. Issues

Plaintiff asserted forty-nine assignments of error in the record on appeal, but only argues in his brief the trial court erred by: (1) granting Honeywell's motion for summary judgment and (2) declaring the ESS reports and related materials to be privileged. Plaintiff abandoned his remaining assignments of error. "Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned." N.C.R. App. P. 28(b)(6) (2007); *see Animal Legal Def. Fund v. Woodley*, 181 N.C. App. 594, 597, 640 S.E.2d 777, 779 (2007) ("[W]e will not review defendants' unargued assignments of error.").

## III. Summary Judgment

### A. Standard of Review

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. The party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact.

A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense. Summary judgment is not appropriate where matters of credibility and determining the weight of the evidence exist.

Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a prima facie case at trial. To hold otherwise . . . would be to allow plaintiffs to rest on their pleadings, effectively neutralizing the useful and efficient procedural tool of summary judgment.

*Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 208, 212, 580 S.E.2d 732, 735 (2003) (internal citations and quotations omit-

**SPAULDING v. HONEYWELL INT'L, INC.**

[184 N.C. App. 317 (2007)]

ted), *aff'd per curiam*, 358 N.C. 131, 591 S.E.2d 521 (2004). We review an order allowing summary judgment *de novo. Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003). "If the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal." *Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989).

### B. Analysis

Plaintiff abandoned his appeal from the order granting summary judgment for all defendants except Honeywell. Plaintiff argues the trial court erred by entering summary judgment in favor of Honeywell and asserts under the 1994 Operating Agreement: (1) Honeywell, as a member of HMC LLC, can be held derivatively liable for acts of the limited liability company; (2) based upon Honeywell's independent duty, our Supreme Court's holding in *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991), does not shield Honeywell from its duty; and (3) Honeywell assumed an independent duty of workplace safety in the HMC LLC operating agreement.

### 1. Derivative Liability of Member

**[1]** Plaintiff argues Honeywell has derivative liability for HMC LLC's acts because of its status as a member of that limited liability company. We disagree.

N.C. Gen. Stat. 57C-3-30(a) (2005) provides as follows:

(a) A person who is *a member, manager, director, executive or any combination thereof of a limited liability company is not liable for the obligations of a limited liability company* solely by reason of being a member, manager, director, or executive and *does not become so by participating, in whatever capacity, in the management or control of the business.* A member, manager, director, or executive may, however, become personally liable by reason of that person's own acts or conduct.

(Emphasis supplied).

This statutory provision expressly limits the liability of a member "for the obligations of a [LLC]" and provides that "participating, in whatever capacity in the management or control of the business," does not impose liability on a member for the acts of the limited liability company and prohibits the court from imposing derivative liability on Honeywell for the acts of HMC LLC. *Id.*

Plaintiff concedes in his brief:

> This interpretation of section 57C-3-30(a) is borne out by the language of the section, which refers to a member's liability for "the obligations of a limited liability company." The language referring to "obligations of" an LLC *negates* the derivative liability that the member would, if treated like a partner, inherit *through* the LLC.

(Emphasis supplied). In *Page v. Roscoe, LLC*, this Court affirmed the trial court's ruling that the plaintiff could not state a claim against a member of a limited liability company because the plaintiff had not "allege[d] any acts on the part of [the member] individually, which are not related to his status as a member of a North Carolina limited liability company[.]" 128 N.C. App. 678, 686-88, 497 S.E.2d 422, 428 (1998).

Whether Honeywell participated or failed to participate in the management of HMC LLC does not allow plaintiff to hold Honeywell derivatively or individually liable for the acts of HMC LLC. N.C. Gen. Stat. § 57C-3-30(a) is clear, that in the absence of an independent duty, mere participation in the business affairs of a limited liability company by a member is insufficient, standing alone and without a showing of some additional affirmative conduct, to hold the member independently liable for harm caused by the LLC.

Plaintiff abandoned all his claims against his employer HMC LLC on appeal. No direct liability of HMC LLC exists to impose derivatively upon Honeywell. *See Spivey v. Lowery*, 116 N.C. App. 124, 126, 446 S.E.2d 835, 837 (Because the plaintiff released the tort-feasor, the plaintiff may not assert a claim against the defendant because of the derivative nature of that defendant's liability.), *disc. rev. denied*, 338 N.C. 312, 452 S.E.2d 312 (1994). This assignment of error is overruled.

## 2. *Woodson* Claims

[2] Honeywell argues if it is deemed to be plaintiff's employer then it is entitled to protection under North Carolina's Workers' Compensation Act. Plaintiff asserts the exclusivity provisions of the Workers' Compensation Act do not apply to Honeywell.

Plaintiff neither contends that Honeywell and HMC LLC are one and the same entity, nor that one company is the alter ego of the other. Rather, plaintiff argues that Honeywell is liable because of its *own and direct* responsibility to maintain workplace safety. The question of whether Honeywell is protected by the exclusivity provi-

SPAULDING v. HONEYWELL INT'L, INC.

[184 N.C. App. 317 (2007)]

sions of and remedies available in the Workers' Compensation Act or civilly liable to plaintiff is governed by whether plaintiff can demonstrate Honeywell promised or assumed an independent duty to him. *See Hamby v. Profile Products, L.L.C.*, 179 N.C. App. 151, 632 S.E.2d 804, *disc. rev. allowed*, 360 N.C. 646, 638 S.E.2d 466 (2006).

### 3. Independent Duty Under the Operating Agreement

Plaintiff argues Honeywell voluntarily undertook an independent duty to ensure worker safety at the plant in the 1994 Operating Agreement and the trial court erred by entering summary judgment for all defendants. Plaintiff asserts, "Honeywell had the duty of ensuring . . . plant worker safety" under the 1994 Operating Agreement, and "Honeywell . . . failed to perform any such duty." We disagree.

In North Carolina, *the employer* owes a non-delegable duty to provide a safe workplace to its employees. *See* N.C. Gen. Stat. § 95-129 (1) and (2) (2005) ("Each employer shall furnish to each of his employees conditions of employment and a place of employment free from recognized hazards that are causing or are likely to cause death or serious injury or serious physical harm to his employees . . . [and] shall comply with occupational safety and health standards or regulations[.]"); *see also Brooks v. BCF Piping*, 109 N.C. App. 26, 33, 426 S.E.2d 282, 286 (1993) (The duty imposed under the North Carolina Occupational Safety and Health Act "is nondelegable."). Here, it is undisputed that plaintiff's employer was HMC LLC. Under the statute and case law, HMC LLC, not Honeywell, owed a nondelegable duty to provide plaintiff with a safe workplace. *Id.*

In the analogous context of a parent-subsidiary relationship, the United States District Court for the Middle District of North Carolina has stated, quoting *Muniz v. National Can Corp.*, 737 F.2d 145, 148 (1st Cir. 1984):

An employer has a nondelegable duty to provide for the safety of its employees in the work environment. The parent-shareholder is not responsible for the working conditions of its subsidiary's employees merely on the basis of [the] parent-subsidiary relationship. *A parent corporation may be liable for unsafe conditions at a subsidiary only if it assumes a duty to act by affirmatively undertaking to provide a safe working environment at the subsidiary. Such an undertaking may be express, as by contract between the parent and the subsidiary, or it may be implicit in the conduct of the parent . . . .*

Because *an employer* has a nondelegable duty to provide safe working conditions for its employees, *we do not lightly assume that a parent corporation has agreed to accept this responsibility.* Neither mere concern with nor minimal contact about safety matters creates a duty to ensure a safe working environment for the employees of a subsidiary corporation. To establish such a duty, the subsidiary's employee must show some proof of a positive undertaking by the parent corporation.

*Richmond v. Indalex Inc.,* 308 F. Supp. 2d 648, 662-63 (M.D.N.C. 2004) (emphasis supplied).

Here, plaintiff asserts Honeywell assumed control over environmental and worker safety at the plant in HMC LLC's 1994 Operating Agreement. Plaintiff, quoting the operating agreement, argues Honeywell: (1) took control over HMC LLC's budget with respect to "environmental matters pertaining to the [Honeywell] Former Sites;" (2) agreed to indemnify and hold harmless HMC LLC, its manager, and HoltraChem "from and against any and all Environmental Costs;" and (3) agreed it "shall, and shall be solely and exclusively entitled to, direct and control, subject to consultation with the Manager, any and all activities and expenditures undertaken in response to an Environmental Event."

Nowhere in the 1994 Operating Agreement does Honeywell "affirmatively undertak[e] to provide a safe working environment" for HMC LLC's employees. *Id.* The agreement states:

[T]he business and affairs of HMC [LLC] shall be managed by the Manager . . . the Manager shall have full and complete authority, power and discretion to manage the business, affairs, and properties of HMC [LLC], to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident in the management of HMC [LLC's] business[.]"

The 1994 Operating Agreement was entered into "by and among" the members of HMC LLC, *i.e.* Honeywell, HoltraChem, and Hanlin, for the "management, operation and financing of" HMC LLC.

Plaintiff contends HMC LLC's operating agreement created an independent duty on the part of Honeywell to HMC LLC's employees. This Court recently addressed a similar argument by a plaintiff in *Babb v. Bynum & Murphrey, PLLC,*:

Next, plaintiffs' contend that the firm's operating agreement created a duty on the part of defendant. North Carolina recog-

nizes the right of a third-party beneficiary to sue for breach of a contract executed for his benefit. In order to assert rights as a third-party beneficiary under the operating agreement, plaintiffs must show they were an intended beneficiary of the contract. We have stated that plaintiffs must show:

(1) that a contract exists between two persons or entities; (2) that the contract is valid and enforceable; and (3) *that the contract was executed for the direct, and not incidental, benefit of the [third party].* A person is a direct beneficiary of the contract if the contracting parties intended to confer a legally enforceable benefit on that person. *It is not enough that the contract, in fact, benefits the [third party], if, when the contract was made, the contracting parties did not intend it to benefit the [third party] directly.* In determining the intent of the contracting parties, the court should consider the circumstances surrounding the transaction as well as the actual language of the contract. *When a third person seeks enforcement of a contract made between other parties, the contract must be construed strictly against the party seeking enforcement.*

Here, the operating agreement states [a] member shall be liable for all acts or neglect for any professional negligence for which he or she is directly responsible. The operating agreement also requires the company to comply with the Rules of Professional Conduct. *We believe the intent of the parties regarding these provisions was not to directly benefit plaintiffs, rather it was to directly benefit the law firm and its members. As some evidence of our belief, neither plaintiffs nor anyone else is designated as a beneficiary of the operating agreement. Moreover, there is no argument in plaintiffs' brief to suggest that the agreement was entered into to directly benefit plaintiffs. Therefore, plaintiffs, at most, are mere incidental beneficiaries under these provisions.* Accordingly, we disagree with plaintiffs.

182 N.C. App. 750, ——, 643 S.E.2d 55, 57-58 (2007) (emphasis supplied) (internal citations and quotations omitted).

Here, as in *Babb*, plaintiff has failed to argue the 1994 Operating Agreement was entered into to directly benefit him or other HMC LLC employees. Neither plaintiff nor anyone else, other than the signatories, were designated to be beneficiaries of the operating agreement. *Id.* The 1994 Operating Agreement was entered into "by and among" the members of HMC LLC wherein they allocated environmental

events, risks, and liabilities among themselves. Plaintiff was neither a direct nor intended beneficiary of this agreement. Also, Honeywell's agreement to be responsible for budgetary expenditures in response to an environmental event is insufficient, as a matter of law, to impose an independent duty upon Honeywell to plaintiff. *Richmond,* 308 F. Supp. 2d at 662-64; *see* N.C. Gen. Stat. § 57C-3-30(a).

Nowhere in the 1994 Operating Agreement does Honeywell "affirmatively undertak[e] to provide a safe working environment" for HMC LLC's employees. *Richmond,* 308 F. Supp. 2d at 662-63. Plaintiff has failed to show he was an intended or direct beneficiary of the 1994 Operating Agreement. *Babb,* 182 N.C. App. at ——, 643 S.E.2d at 57-58. This assignment of error is overruled.

### 4. Independent Duty under Environmental Statutes

**[3]** Plaintiff also argues Honeywell owed him an independent duty to provide for workplace safety due to Honeywell's alleged violations of or liability to remediate conditions at the plant under environmental statutes. We disagree.

> A federal court has addressed this argument and held that: While these statutes certainly provide for private causes of action, those causes of action are limited to recovery of response costs under CERCLA and to enforce compliance under RCRA. *See* 42 U.S.C. §§ 9613(h), 9607(a); 42 U.S.C. § 6792(a). *Therefore, there is no private cause of action under either CERCLA or RCRA to recover damages for personal injuries suffered as a result of violations of those statutes.*

*Polcha v. AT & T Nassau Metals Corp.,* 837 F. Supp. 94, 96 (M.D. Penn. 1993) (emphasis supplied). Plaintiff's alleged breach of environmental statutes did not create an independent duty of workplace safety to plaintiff. Plaintiff was never employed by Honeywell. Plaintiff's employer, HMC LLC, not Honeywell owed him a nondelegable duty to provide its employees with a safe workplace. This assignment of error is overruled.

### IV. Privileged Materials

Plaintiff argues the trial court erred by declaring the ESS reports and related materials to be privileged. The trial court stated it considered the ESS reports and related materials in granting defendants' motions for summary judgment. Plaintiff admits "the summary judgment ruling [was] not affected by the issue of whether the ESS

reports are privileged." In light of our holding to affirm the trial court's order granting Honeywell's motion for summary judgment, it is unnecessary for us to reach this assignment of error.

## V. Conclusion

Plaintiff has abandoned all claims he asserted against all defendants on appeal except Honeywell. The trial court properly granted Honeywell's motion for summary judgment on plaintiff's claims. In light of our holding to affirm the trial court's order granting Honeywell's motion for summary judgment, it is unnecessary for us to reach plaintiff's assignment of error regarding the trial court's ruling on the ESS reports and related materials. The trial court's judgment is affirmed.

Affirmed.

Chief Judge MARTIN and Judge McCULLOUGH concur.