BRADSHAW B. LUPTON, INDIVIDUALLY AND ON BEHALF OF ALL PERSONS SIMILARLY SITUATED, PLAINTIFF v. BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA, A NON-PROFIT CORPORATION, DEFENDANT AND MICHAEL F. EASLEY, ATTORNEY GENERAL, ON BEHALF OF THE RIGHTS AND INTERESTS OF THE PUBLIC, DEFENDANT-INTERVENOR

ROLAND GIDUZ, INDIVIDUALLY AND ON BEHALF OF ALL PERSONS SIMILARLY SITUATED, PLAINTIFF v. BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA, A NON-PROFIT CORPORATION, DEFENDANT AND MICHAEL F. EASLEY, ATTORNEY GENERAL, ON BEHALF OF THE RIGHTS AND INTERESTS OF THE PUBLIC, DEFENDANT-INTERVENOR

No. COA99-1138

(Filed 1 August 2000)

**Insurance— reserves—filed rate doctrine**

The trial court did not err by granting a Rule 12(b)(6) dismissal of plaintiffs' class actions alleging that defendant medical service corporation maintained excessive reserves on the ground that the filed rate doctrine precluded the actions. The filed rate doctrine holds that a plaintiff may not claim damages on the ground that a rate approved by a regulator as reasonable is excessive and that rates set by a regulator may not be collaterally attacked; although plaintiffs contended that they were seeking a declaration that defendant's reserve is excessive rather than a redetermination of their rates, the Commissioner of Insurance considers the reserve amount in approving rates and any allegation that defendant accumulated an excessive reserve requires the recalculation of approved rates.

Appeal by plaintiffs from order entered 14 June 1999 by Judge Ben F. Tennille in Durham County Superior Court. Heard in the Court of Appeals 8 June 2000.

*Marvin Schiller and David G. Schiller for plaintiffs-appellants.*

*Maupin Taylor & Ellis, P.A., by M. Keith Kapp and Kevin W. Benedict; and Robinson, Bradshaw & Hinson, P.A., by Robin L. Hinson and Frank E. Emory, Jr., for defendant-appellee Blue Cross and Blue Shield of North Carolina.*

WALKER, Judge.

On 30 June 1997, plaintiff Roland Giduz filed a class action against defendant Blue Cross and Blue Shield of North Carolina (Blue Cross) alleging, inter alia, violations of N.C. Gen. Stat. § 58-65-95. On 8 May 1998, plaintiff Bradshaw B. Lupton filed a class action against Blue Cross and filed an amended complaint on 28 October 1998, making allegations identical to those of Giduz. Pursuant to Rule 2.1 of the General Rules of Practice for the Superior and District Courts, the Chief Justice of our Supreme Court designated both actions as exceptional and assigned them to the Special Superior Court for Complex Business Cases. The trial court consolidated the two actions and substituted Lupton as the named plaintiff.

Blue Cross is a non-profit medical service corporation governed by Articles 65 and 66 of Chapter 58 of the North Carolina General Statutes. Chapter 58 requires that health insurers and medical service corporations maintain monetary "reserves" such that the solvency of the insurer will not likely be threatened if claims or other expenses are higher than forecast in any given year. Under N.C. Gen. Stat. § 58-65-95, Blue Cross is required to maintain a minimum monetary "reserve" to provide for contingent expenditures. Specifically:

> Every such corporation [subject to this Article] shall accumulate and maintain, . . ., a special contingent surplus or reserve at the following rates annually of its gross annual collections from membership dues, exclusive of receipts from cost plus plans, until the reserve equals an amount that is three times its average monthly expenditures for claims and administrative and selling expenses:
>
> (1) First $200,000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4%
>
> (2) Next $200,000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2%
>
> (3) All above $400,000 . . . . . . . . . . . . . . . . . . . . . . . . . .1%

N.C. Gen. Stat. § 58-65-95(b) (1999). Additionally, the reserve may not "exceed an amount equal to six times the average monthly expendi-

tures for claims and administrative and selling expenses." N.C. Gen. Stat. § 58-65-95(c) (1999).

Under our State's statutory rate making scheme, the Commissioner of Insurance (Commissioner) determines whether the rates filed by an insurer are reasonable. N.C. Gen. Stat. § 58-65-40 provides in part:

> No corporation subject to the provisions of this Article and Article 66 of this Chapter shall enter into any contract with a subscriber after the enactment hereof unless and until it shall have filed with the Commissioner of Insurance a full schedule of rates to be paid by the subscribers to such contracts and shall have obtained the Commissioner's approval thereof. The Commissioner may refuse approval if he finds that such rates are excessive, inadequate or unfairly discriminatory; or do not exhibit a reasonable relationship to the benefits provided by such contracts. At all times such rates and form of subscribers' contracts shall be subject to modification and approval of the Commissioner of Insurance under rules and regulations adopted by the Commissioner, in conformity to this Article and Article 66 of this Chapter.

N.C. Gen. Stat. § 58-65-40 (1999). Under N.C. Gen. Stat. § 58-2-75(a) (1999), judicial review of the Commissioner's rate determination may be obtained by petition within 30 days of the Commissioner's decision. If no petition is filed, "the parties aggrieved shall be deemed to have waived the right to have the merits of the order or decision reviewed and there shall be no trial of the merits thereof by any court to enforce or restrain enforcement of the same." *Id.*

Plaintiffs' amended complaint alleged that Blue Cross violated N.C. Gen. Stat. § 58-65-95 by accumulating and maintaining a reserve that exceeds "the statutorily authorized level of reserves legislatively determined to be sufficient and reasonably necessary" for the payment of Blue Cross's claims and expenses. Further, plaintiffs claimed Blue Cross misrepresented to the Commissioner that its reserves were within the statutory limits. Plaintiffs argue they have "property and contractual rights" in the statutorily excessive reserves and seek to have it placed into a common fund and distributed to them.[1]

---

1. Plaintiffs cite N.C. Gen. Stat. § 58-65-160 in support of their contention that they have contractual rights in the reserves. Section 58-65-160 protects the rights of Chapter 58 corporations to merge or consolidate, provided that "the rights of the subscribers . . . in the reserves" must be "adequately pro-

Plaintiffs sought a declaratory judgment and stated four causes of action: (1) unfair and deceptive trade practices; (2) breach of fiduciary duties; (3) unjust enrichment; and (4) conversion and fraud.

On 13 July 1998, Blue Cross moved to dismiss plaintiffs' claims pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. On 10 June 1999, the trial court entered an order, which was amended on 14 June 1999, granting Blue Cross's motion to dismiss for failure to state a claim upon which relief may be granted, on the grounds that the "filed rate doctrine" precludes plaintiffs' actions as a matter of law.

Plaintiffs argue the trial court erred in granting Blue Cross's motion to dismiss. Specifically, dismissing their claims based upon the "filed rate doctrine" was error.

A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint. *See* N.C.R. Civ. P. 12(b)(6) (1999); *Shaut v. Cannon*, 136 N.C. App. 834, 834-35, 526 S.E.2d 214, 215 (2000). A dismissal of a complaint for failure to state a claim upon which relief can be granted is proper when the complaint on its face reveals that no law supports a plaintiff's claim or that facts sufficient to make a good claim are absent or when some fact disclosed in the complaint necessarily defeats a plaintiff's claim. *See Jackson v. Bumgardner*, 318 N.C. 172, 347 S.E.2d 743 (1986). A motion to dismiss is properly granted where a valid legal defense stands as an insurmountable bar to a plaintiff's recovery. *See Johnson v. N.C. Dept. of Transportation*, 107 N.C. App. 63, 67, 418 S.E.2d 700, 702 (1992). For the purpose of the Rule 12(b)(6) motion, the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of facts are not admitted. *See Lloyd v. Babb*, 296 N.C. 416, 427, 251 S.E.2d 843, 851 (1979) (*quoting Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970)).

Our Supreme Court has recently adopted the "filed rate doctrine," where it held that a "plaintiff may not claim damages on the ground that a rate approved by a regulator as reasonable is nonetheless excessive because it is the product of unlawful conduct." *N.C. Steel, Inc. v. National Council on Compensation Ins.*, 347 N.C. 627, 632, 496 S.E.2d 369, 372 (1998). Further, after rates have been set by a regulator, those rates may not be collaterally attacked. *Id.* The proper venue for questions involving rates is through the Insurance Commissioner and not a court or a jury. *Id.* The filed rate doctrine

tected" by rules and regulations adopted by the Commissioner. The section was repealed by Session Laws 1998-3, s. 3, effective 22 May 1998.

precludes a plaintiff from requesting a recalculation of the rates the Commissioner would have set absent the alleged illegal conduct of a defendant. *See N.C. Steel, Inc. v. National Council on Compensation Ins.*, 123 N.C. App. 163, 176, 472 S.E.2d 578, 585 (1996), *affirmed in part and reversed on separate grounds*, 347 N.C. 627, 496 S.E.2d 369 (1998). The "General Assembly has given the Insurance Commissioner the duty of setting rates. The Commissioner, aided by his staff, has the expertise to determine proper rates." *N.C. Steel*, 347 N.C. at 632, 496 S.E.2d at 372. The filed rate doctrine applies in the context of a suit under N.C. Gen. Stat. § 75-1 et seq. *See N.C. Steel*, 123 N.C. App. at 175, 472 S.E.2d at 585.

In *N.C. Steel*, the plaintiffs, companies paying workers' compensation insurance premiums, alleged that the defendant insurance companies withheld certain evidence from the Insurance Commissioner about servicing carrier fees for residual market workers' compensation insurance in order to secure approval of excessive rates. *See N.C. Steel*, 347 N.C. at 630, 496 S.E.2d at 371. The plaintiffs first argued that since defendants had wrongfully obtained the excessive rate, they were entitled to a refund of the excess premiums paid. *Id.* at 631, 496 S.E.2d at 372. Plaintiffs' second theory alleged that defendants conspired to pay excessive servicing carrier fees, which prevented the premiums from covering losses in the residual market. *Id.* at 636, 496 S.E.2d at 374. Plaintiffs argued this created a shortfall which required the defendants to use part of the premiums from the voluntary market to cover the loss. *Id.* Plaintiffs claimed that a recalculation of the rates in order to prove damages was not necessary. *Id.*

Our Supreme Court disagreed and held:

We believe that the plaintiffs cannot prove their claim without the rates set by the Commissioner being questioned. The plaintiffs' damages must come from being shifted from the voluntary market to the residual market. If the plaintiffs offer evidence that a certain number of policyholders who were in the residual market should have been in the voluntary market, the defendants could show that the influx of these policyholders would have caused the Commissioner to set different rates for the two markets. This is a questioning of rates set by the Commissioner, which the filed rate doctrine is designed to prevent.

*Id.* at 636, 496 S.E.2d at 374-75.

In the case at bar, plaintiffs contend that they are not seeking a redetermination of their insurance rates but rather a declaration that

Blue Cross's reserve is statutorily excessive.[2] Plaintiffs argue that "the manner and method in which [Blue Cross] accumulated the reserves is irrelevant to the issue of whether the filed rate doctrine is applicable." We disagree.

In approving the rates, the Commissioner considers Blue Cross's reserve amount. Thereafter, Blue Cross's collection of premiums, based on these rates, determines the accumulation of the § 58-65-95 reserve. Thus, if Blue Cross accumulates a reserve in excess of the statutory limits, the Commissioner is authorized under N.C. Gen. Stat. § 58-65-40 to modify the rates, thereby affecting the amount of the reserve. Any allegation that Blue Cross accumulated an excessive reserve requires the recalculation of approved rates, notwithstanding plaintiffs' argument to the contrary. Accordingly, "the plaintiffs cannot prove their claim without the rates set by the Commissioner being questioned." *N.C. Steel*, 347 N.C. at 636, 496 S.E.2d at 374. Thus, the trial court properly dismissed plaintiffs' actions pursuant to Rule 12(b)(6).

Affirmed.

Judges JOHN and TIMMONS-GOODSON concur.

---

2. Plaintiffs' original complaint alleged that Blue Cross charged and collected excessive rates and misrepresented the amount of its statutory reserves to the Commissioner in order to secure the approval of higher rates. Plaintiffs' amended complaint removed all references to these allegations.