ROBERT STUTTS, AND ALL OTHER SIMILARLY SITUATED INDIVIDUALS OR ENTI-
TIES WHO ARE PRESENT OR FORMER POLICYHOLDERS OF WORKERS COM-
PENSATION INSURANCE POLICIES ISSUED BY THE DEFENDANTS WHEREON
THE DEFENDANTS NEVER WAS AT RISK ON SUCH POLICIES AND WHO HAVE
NEVER BEEN REFUNDED INSURANCE PREMIUMS PAID FOR SUCH POLI-
CIES, PLAINTIFFS v. THE TRAVELERS INDEMNITY COMPANY, ST. PAUL TRAVEL-
ERS INSURANCE COMPANY, TRAVELERS PROPERTY AND CASUALTY, THE
TRAVELERS INSURANCE GROUP INC., THE TRAVELERS GROUP AND THE
TRAVELERS INSURANCE COMPANY, DEFENDANTS

No. COA09-52

(Filed 15 September 2009)

## 1. Insurance— filed rate doctrine—workers' compensation premiums—no employees—unfair trade practices claim

Summary judgment was properly granted for defendants on an unfair trade practices claim where plaintiff sought a refund of his workers' compensation premium. Plaintiff's claim was barred by the filed rate doctrine, which provides that a plaintiff may not claim damages on the ground that an approved rate is excessive because it is the product of unlawful conduct.

## 2. Insurance— workers' compensation—exposure to risks— no refund of premium

Plaintiff was not entitled to a refund of workers' compensation insurance premiums for a period during which he did not cover himself and had no employees. Defendants were nevertheless exposed to the risks in the policies because plaintiff could have hired an employee during this period.

Appeal by plaintiff from order entered 28 October 2008 by Judge Robert F. Floyd, Jr. in Cumberland County Superior Court. Heard in the Court of Appeals 10 June 2009.

*The Law Office of James M. Johnson, by James M. Johnson; Brent Adams & Associates, by Brenton D. Adams, for plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice, by Richard T. Rice and Carrie A. Hanger, for defendants-appellees.*

HUNTER, Robert C., Judge.

Plaintiff Robert Stutts appeals from the trial court's entry of summary judgment to defendants The Travelers Indemnity Company, St. Paul Travelers Insurance Company, Travelers Property and Casualty, The Travelers Insurance Group Inc., The Travelers Group, and The Travelers Insurance Company. Plaintiff's main contention on appeal is that the "filed rate" doctrine is inapplicable in this case and thus the trial court erred in entering summary judgment on that basis. Because we conclude that the "filed rate" doctrine does apply and bars plaintiff's claim, we affirm.

Facts

In March 2003, plaintiff started his own business hauling concrete and other materials for his sole customer, Fayetteville Block Materials, Inc. ("Fay Block Materials"). Plaintiff was the sole owner and operator of the business. In March 2003, plaintiff applied for a workers' compensation insurance policy through the residual or involuntary market known as the The North Carolina Workers' Compensation Insurance Plan or the "assigned risk plan." Plaintiff obtained a workers' compensation policy covering the period of 21 March 2003 through 21 March 2004 ("2003 policy"). On 21 March 2004, plaintiff renewed the policy for a second year, covering the period of 21 March 2004 through 21 March 2005 ("2004 policy"). The North Carolina Rate Bureau assigned defendants as the servicing issuance carrier for both policies.

The policies defendants issued to plaintiff provided workers' compensation and employer liability coverage for any employee that plaintiff might hire during the policy periods. Plaintiff elected to exclude himself from coverage on both policies and did not hire any employees during either policy period.

On 27 January 2005, plaintiff was injured while hauling concrete for Fay Block Materials. Plaintiff filed a workers' compensation claim against Fay Block Materials on 11 February 2005 for the injuries sustained during the accident. Defendants denied liability on the ground

that plaintiff was not covered by the workers' compensation insurance policy that he had purchased, and the North Carolina Industrial Commission dismissed his case.

Plaintiff paid a premium of $850.00 for the 2003 policy and $850.00 for the 2004 policy. Defendants conducted an audit in 2004, which confirmed that plaintiff had no employees during the 2003 policy period, and defendants provided him with a premium reimbursement of $568.00. Plaintiff cancelled the 2004 policy on 5 March 2005, and a subsequent audit showed that he had no employees during this period either. Defendants provided him with a $575.00 prorated premium reimbursement. Plaintiff demanded that defendants refund the entire remaining premium balances.

On 12 March 2008, plaintiff filed a complaint, alleging that defendants had engaged in unfair and deceptive trade practices in violation of Chapter 75 and Chapter 58 of the General Statutes and that he was entitled to: (1) a full refund of the premiums he paid, plus interest; (2) treble damages; (3) punitive damages ; and (4) attorney's fees. On 28 April 2008, defendants moved to dismiss plaintiff's complaint for failure to state a claim for relief and failure to exhaust administrative remedies. Subsequently, on 13 May 2008, plaintiff filed a complaint with the Rate Bureau, which denied plaintiff's claim for a refund on 21 August 2008.

On 8 September 2008, plaintiff filed an amended complaint, claiming that he had exhausted his administrative remedies. On 19 September 2008, defendants supplemented their motion to dismiss, asserting that plaintiff's claim was barred by the "Filed Rate Doctrine." On 7 October 2008, plaintiff moved for summary judgment. The trial court converted defendants' motion to dismiss into a motion for summary judgment, granted summary judgment to defendants, and dismissed plaintiff's claim with prejudice. Plaintiff timely appealed to this Court.

## Discussion

Plaintiff contends that the trial court erred in granting summary judgment to defendants. "Summary judgment is properly granted when the forecast of evidence 'reveals no genuine issue as to any material fact, and when the moving party is entitled to a judgment as a matter of law.' " *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000) (quoting *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972)). "In ruling on a motion for summary judgment, 'the court may consider the pleadings, depositions, admis-

sions, affidavits, answers to interrogatories, oral testimony and documentary materials.' " *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004) (quoting *Dendy v. Watkins*, 288 N.C. 447, 452, 219 S.E.2d 214, 217 (1975)). The moving party bears the burden of establishing the lack of any triable issue of fact, *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985), and all the evidence produced must be considered in the light most favorable to the non-moving party, *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003). On appeal, an order granting summary judgment is reviewed de novo. *McCutchen v. McCutchen*, 360 N.C. 280, 285, 624 S.E.2d 620, 625 (2006).

[1] On appeal, plaintiff argues that summary judgment was improper because his forecast of evidence sets out a prima facie case for unfair and deceptive trade practices under Chapter 75 and Chapter 58 of the General Statutes. Defendants, on the other hand, contend that summary judgment was proper because, as they argued in support of their motion in the trial court, the "filed rate" doctrine bars plaintiff's claim in this case.

"The filed rate doctrine provides that a plaintiff may not claim damages on the ground that a rate approved by a regulator as reasonable is nonetheless excessive because it is the product of unlawful conduct." *N.C. Steel, Inc. v. National Council on Compensation Ins.*, 347 N.C. 627, 632, 496 S.E.2d 369, 372 (1998). In *N.C. Steel*, the Supreme Court explained that any legal challenge implicating the rates of the Commissioner is necessarily precluded by the "filed rate" doctrine:

> [T]he jury in this case would have had "to measure the difference between the properly approved workers' compensation insurance rates paid by plaintiffs and those mythical rates which would have been applicable but for the defendants' concerted activity. This undertaking is not within the province of the courts but should reside with the respective state regulators with authority over rate-setting."

*Id.* at 637, 496 S.E.2d at 375 (quoting *Uniforce Temporary Personnel, Inc. v. Nat'l Council on Compensation Ins., Inc.*, 892 F. Supp. 1503 (S.D. Fla. 1995), *aff'd*, 87 F.3d 1296 (11th Cir. 1996)).

After our Supreme Court's adoption of the "filed rate" doctrine in *N.C. Steel*, this Court specifically held that the doctrine may apply to claims brought under Chapter 75:

[A]fter rates have been set by a regulator, those rates may not be collaterally attacked. The proper venue for questions involving rates is through the Insurance Commissioner and not a court or a jury. The filed rate doctrine precludes a plaintiff from requesting a recalculation of the rates the Commissioner would have set absent the alleged illegal conduct of a defendant. The "General Assembly has given the Insurance Commissioner the duty of setting rates. The Commissioner, aided by his staff, has the expertise to determine proper rates." The filed rate doctrine applies in the context of a suit under N.C. Gen. Stat. § 75-1 et seq.

*Lupton v. BCBS of N.C.*, 139 N.C. App. 421, 424-25, 533 S.E.2d 270, 272-73 (quoting *N.C. Steel*, 347 N.C. at 632, 496 S.E.2d at 372) (internal citations omitted), *disc. review denied*, 353 N.C. 266, 546 S.E.2d 105 (20000).

The General Assembly created the Rate Bureau to perform numerous functions, including "the promulgation of rates" with respect to "workers' compensation and employers' liability insurance written in connection therewith . . . ." N.C. Gen. Stat. § 58-36-1(1) (2007). Pertinent here, N.C. Gen. Stat. § 58-36-1 further specifies the duties of insurers with respect to the residual or involuntary insurance market:

It is the duty of every insurer that writes workers' compensation insurance in this State and is a member of the Bureau, as defined in this section and G.S. 58-36-5 to insure and accept any workers' compensation insurance risk that has been certified to be "difficult to place" by any fire and casualty insurance agent who is licensed in this State. When any such risk is called to the attention of the Bureau by receipt of an application with an estimated or deposit premium payment and it appears that the risk is in good faith entitled to such coverage, the Bureau will bind coverage for 30 days and will designate a member who must issue a standard workers' compensation policy of insurance that contains the usual and customary provisions found in those policies. . . . The Bureau will make and adopt such rules as are necessary to carry this section into effect, subject to final approval of the Commissioner. As a prerequisite to the transaction of workers' compensation insurance in this State, every member of the Bureau that writes such insurance must file with the Bureau written authority permitting the Bureau to act in its behalf, as provided in this section, and an agreement to accept risks that are assigned to the member by the Bureau, as provided in this section.

STUTTS v. TRAVELERS INDEM. CO.

[200 N.C. App. 90 (2009)]

N.C. Gen. Stat. § 58-36-1(5)(a). Thus, according to the statute, all insurers that write workers' compensation insurance policies in North Carolina—including defendants—must be members of the Rate Bureau and are required to "accept" and insure workers' compensation risks "designated" to them by the Rate Bureau.

Pursuant to N.C. Gen. Stat. § 58-36-15(a) (2007), the Rate Bureau is required to file with the Commissioner of Insurance "copies of the rates, loss costs, classification plans, rating plans and rating systems used by its members." The Commissioner must then either approve these filings as complying with the requirements of Chapter 58 or hold a hearing regarding "in what respect and to what extent" the Commissioner considers the filings to be non-compliant. N.C. Gen. Stat. § 58-36-20 (2007).

Here, the applicable rating rules adopted by the Rate Bureau and approved by the Commissioner are set out in Rules 3A 6 and 3A 16 in the Basic Manual. According to those rating rules, an insurer, including defendants, must charge a minimum annual deposit premium of $850.00 for workers' compensation insurance policies, subject to adjustment on a final annual audit. Rule 3A 6. Under the rules, where the insured is a sole proprietor without employees, as is plaintiff, the minimum premium for classification "Code 8810" must be charged. Rule 3A 16.

Two "circulars" from the Rate Bureau to member insurers provide the applicable minimum premium rates that were approved by the Commissioner for "Code 8810." For plaintiff's 2003 policy with defendants, the applicable circular provides that the minimum premium is $282.00. As for plaintiff's 2004 policy, the relevant circular specifies a $288.00 minimum premium, which was later prorated after audit to $275.00 for 349 days of coverage.

The evidence in the record establishes that defendants charged and collected from plaintiff the applicable premiums that they were required to charge and collect under the rating rules approved by the Commissioner. This conclusion is supported by the Rate Bureau's letter denying plaintiff claim for relief:

Travelers did not violate any provisions of the North Carolina statutes or the rules and procedures provided for in the Basic Manual in its calculation and collection of the minimum premiums for the coverage requested by Mr. Stutts. *Minimum premiums include the "expense constant," a $210.00 premium*

*charge that is applied to every assigned risk policy regardless of premium size to contribute to the recovery of expenses common to issuing, recording, and auditing a policy.* As we are sure the parties are aware, there are costs incurred by companies in issuing, maintaining and auditing a workers compensation policy even if it is ultimately determined that no employees were hired by the employer during the policy period.

(Emphasis added.)

In issuing plaintiff his workers' compensation policies, defendants acted in accordance with the governing rating rules filed by the Rate Bureau and approved by the Commissioner. Despite plaintiff's characterization of his claim as "nothing more than a breach of contract action," at bottom, it is defendants' adherence to these requirements for charging and collecting minimum premiums that is the gravamen of plaintiff's complaint. Because "plaintiff[] cannot prove [his] claim without the rates set by the Commissioner being questioned[,]" the "filed rate" doctrine precludes him from collaterally challenging those rates. *N.C. Steel*, 347 N.C. at 636, 496 S.E.2d at 374. Instead, "[t]he proper venue for questions involving rates is through the Insurance Commissioner and not a court or a jury." *Lupton*, 139 N.C. App. at 424, 533 S.E.2d at 272.

[2] Plaintiff nevertheless argues that he is entitled to a full refund of his premiums—not just the portions already refunded by defendants—because no risk of loss ever attached under the policies that defendants issued and thus the policies failed for lack of consideration. Defendant specifically contends that since he elected not to cover himself under the policies and because he did not hire any employees during the policy periods, defendants knew or should have known that the policies were worthless "ghost policies" and that defendants had incurred no risk. In support of his contention, plaintiff relies on *Latta v. Farmers County Mutual Fire Ins. Co.*, 67 N.C. App. 494, 496, 313 S.E.2d 214, 215-16, *disc. review denied*, 311 N.C. 401, 319 S.E.2d 270 (1984), in which this Court held: "It is an established principle of insurance law that an insurer must return premiums where, without fault or fraud by the insured, no risk to the insurer ever attaches under the policy. In such a case, the premiums have been paid upon a consideration which has failed."

Although plaintiff argues that no risk of loss ever attached under his policies with defendants, he does not dispute that the policies provided workers' compensation and employer liability coverage for any

employees plaintiff might have hired during the policy periods. Despite the fact that plaintiff elected to not include himself in the coverage and ultimately did not hire any employees, there nonetheless existed the possibility that plaintiff might hire an employee and a risk that the employee would file a workers' compensation claim. Under their policies, defendants would have been obligated to defend plaintiff and pay any workers' compensation benefits that accrued during the policy periods. Thus, plaintiff's insurance coverage was in effect during the policy periods and exposed defendants to the risks specified in the policies—plaintiff's decision to exclude himself from coverage and to not hire any employees does not change that fact. *See* 44 Am. Jur. 2d *Insurance* § 915 (2009) ("If the risk does not or cannot attach, or if no part of the interest insured is subject to any of the specified perils, the insurer cannot claim or retain the premium, in the absence of any fraud or fault on the part of the insured."). Risk of loss attached to both the 2003 and 2004 policies, providing adequate consideration to support the policies. Plaintiff is, therefore, not entitled to recover the entire amount of premiums paid.

Affirmed.

Judges STEELMAN and GEER concur.