NATIONWIDE MUTUAL INSURANCE COMPANY, PLAINTIFF V. DONALD BURGDOFF,
INDIVIDUALLY AND CYNTHIA BURGDOFF, INDIVIDUALLY AND DONALD BURGDOFF
AND CYNTHIA BURGDOFF, AS CO-EXECUTORS OF THE ESTATE OF PATRICIA
ELEANOR BURGDOFF, DECEASED, DEFENDANTS

No. COA09-1117

(Filed 7 September 2010)

**Insurance— automobile—underinsured motorists coverage—
opportunity to select or reject coverage—question of fact**

Whether defendants were given the opportunity to reject or
select different underinsured motorists coverage limits was a factual
determination for the jury, and the trial court erred by granting
summary judgment for plaintiff Nationwide in a declaratory judg-
ment action to determine the amount of underinsured motorists
coverage coverage available to defendants.

Appeal by defendants from order entered 14 May 2009 by Judge
John L. Holshouser, Jr., in Rowan County Superior Court. Heard in
the Court of Appeals 11 February 2010.

*Robinson Elliott & Smith, by William C. Robinson and
Katherine A. Tenfelde, for plaintiff-appellee.*

*Brooke & Brooke, by Thomas M. Brooke, for defendant-appellants.*

*Twiggs, Beskind, Strickland & Rabenau, P.A., by Jerome P.
Trehy, Jr., on behalf of North Carolina Advocates for Justice,
amicus curiae.*

CALABRIA, Judge.

Donald ("Mr. Burgdoff") and Cynthia ("Mrs. Burgdoff") Burgdoff,
both individually and as co-executors of the Estate of Patricia
Eleanor Burgdoff (collectively "defendants"), appeal an order grant-
ing summary judgment to Nationwide Mutual Insurance Company
("plaintiff"). We reverse and remand.

In 1995, defendants moved to North Carolina from the state of
New York. In October 1995, Mrs. Burgdoff met with plaintiff's licensed
insurance agent Susan Bare ("Ms. Bare"), in order to obtain automo-
bile insurance. Mrs. Burgdoff and Ms. Bare discussed the types of cov-
erages available. On the basis of these discussions, Mrs. Burgdoff
completed an "Automobile Insurance Application," which requested,
*inter alia,* bodily injury insurance coverage for uninsured and under-
insured motorists ("UM/UIM"), in the maximum amount of $100,000

per person and $300,000 per accident ("100/300"). On 4 October 1995, Mrs. Burgdoff signed a "Personal Auto Closing Statement" ("the closing statement"). However, Mrs. Burgdoff did not execute a North Carolina Rate Bureau UM/UIM Selection/Rejection Form ("selection/rejection form") when she signed the closing statement. Defendants were then issued an automobile insurance policy by plaintiff, effective 4 October 1995 ("the Burgdoff policy"). The Burgdoff policy, with its corresponding coverage limits, has been repeatedly renewed by defendants and was still in effect at the time of the filing of this action.

On 8 December 2006, defendants' eight-year-old daughter, Patricia Eleanor Burgdoff ("Patricia"), was killed in an automobile accident. As a result of the accident, defendants filed a wrongful death action against Ross Edward Neese ("Neese") in Rowan County Superior Court. At the time of the accident, Neese had a liability insurance policy in effect with North Carolina Farm Bureau Insurance Group ("the Neese policy"). The Neese policy contained a personal liability limit of $100,000 per person.

Because defendants sought damages from Neese in excess of the $100,000 personal liability limit contained in the Neese policy, they notified plaintiff of their intention to seek recovery under the UIM provision of the Burgdoff policy. Defendants then served copies of their wrongful death action on plaintiff as an unnamed defendant.

On 24 September 2009, plaintiff filed a "Complaint for Declaratory Judgment" under Rule 57 of the North Carolina Rules of Civil Procedure in Rowan County Superior Court. Plaintiff sought a determination of the amount of UIM coverage available to defendants under the Burgdoff policy. Plaintiff and defendants each filed motions for summary judgment. After a hearing on 14 May 2009, the trial court granted summary judgment to plaintiff and issued a Declaration of Judgment that defendants were entitled to UM/UIM coverage in the amount of 100/300. Defendants appeal.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009).

The party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact.

. . .

Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a prima facie case at trial.

*Edwards v. GE Lighting Sys., Inc.,* —— N.C. App. ——, ——, 685 S.E.2d 146, 148 (2009) (citation omitted). "On appeal, an order granting summary judgment is reviewed de novo." *Stutts v. Travelers Indem. Co.,* —— N.C. App. ——, ——, 682 S.E.2d 769, 771 (2009).

In North Carolina, UIM coverage is governed by N.C. Gen. Stat. § 20-279.21(b)(4). When defendants first purchased the Burgdoff policy in October 1995, this statute read, in relevant part:

The coverage required under this subdivision shall not be applicable where any insured named in the policy rejects the coverage. An insured named in the policy may select different coverage limits as provided in this subdivision. *If the named insured does not reject underinsured motorist coverage and does not select different coverage limits, the amount of underinsured motorist coverage shall be equal to the highest limit of bodily injury liability coverage for any one vehicle in the policy.* Once the option to reject underinsured motorist coverage or to select different coverage limits is offered by the insurer, the insurer is not required to offer the option in any renewal, reinstatement, substitute, amended, altered, modified, transfer, or replacement policy unless a named insured makes a written request to exercise a different option. The selection or rejection of underinsured motorist coverage by a named insured or the failure to select or reject is valid and binding on all insureds and vehicles under the policy.

Rejection of or selection of different coverage limits for underinsured motorist coverage for policies under the jurisdiction of the North Carolina Rate Bureau *shall be made in writing by the named insured on a form promulgated by the Bureau and approved by the Commissioner of Insurance.*

N.C. Gen. Stat. § 20-279.21(b)(4) (1995) (emphasis added). The disposition of the instant case is entirely dependent upon a determination of the effect of a failure to provide an insured with a valid North Carolina Rate Bureau UM/UIM selection/rejection form, as required by this statute. The parties agree that no form had been either pre-

sented to defendants or executed at the time of Patricia's death and, as a result, plaintiff was in violation of the statute when it failed to provide defendants with the form.

The parties each present a single case that they respectively believe should control the analysis of this issue. Plaintiff argues that the instant case is controlled by the holding of our Supreme Court in *State Farm Mut. Auto. Ins. Co. v. Fortin*, 350 N.C. 264, 513 S.E.2d 782 (1999). In *Fortin*, the insured initially rejected UIM coverage. N.C. Gen. Stat. § 20-279.21(b)(4) was subsequently amended to require an insurance company to offer its insured, on a selection/rejection form promulgated by the North Carolina Rate Bureau, a fresh choice to reject UIM coverage or select different coverage limits the first time a policy was renewed after the amendment. *Id.* at 270-71, 513 S.E.2d at 785. However, the renewal forms the insurance company provided to the insured simply incorporated the previous rejection and did not offer the insured a fresh choice of UIM coverage. As a result, our Supreme Court held that there was an invalid rejection of UIM coverage. *Id.* at 271, 513 S.E.2d at 785. "[B]ecause there was neither a valid rejection of UIM coverage nor a selection of different UIM coverage limits," the amount of the insured's UIM coverage was determined to be "equal to the highest limits of bodily injury liability coverage for any one vehicle" insured under their policy, as required by N.C. Gen. Stat. § 20-279.21(b)(4). *Id.* at 271, 513 S.E.2d at 786. Plaintiff contends that the facts in the instant case also support a finding of an invalid rejection of UIM limits.

Defendants, in contrast, argue that the instant case case should be controlled by this Court's holding in *Williams v. Nationwide Mut. Ins. Co.*, 174 N.C. App. 601, 621 S.E.2d 644 (2005). In *Williams*, the parties stipulated that the insurance company had never offered the insured the opportunity to either reject UIM coverage or select different UIM coverage limits. *Id.* at 603, 621 S.E.2d at 645-46. This Court held that when an insurance company totally failed to allow their insured to choose their policy benefits as required by N.C. Gen. Stat. § 20-279.21(b)(4), the UIM coverage limits established in that statute did not apply. *Id.* at 605-06, 621 S.E.2d at 647. Instead, taking into account the remedial nature of the automobile insurance statutes, this Court determined that the policy provided UIM coverage with limits of $1,000,000 per person and $1,000,000 per accident, the maximum amount permitted by our statutes. *Id.* at 606, 621 S.E.2d at 647. Defendants argue that plaintiff's failure to provide defendants with the selection/rejection form constitutes a *per se* total failure to pro-

vide an opportunity to reject UIM coverage or select different UIM policy limits, bringing this case under the *Williams* holding.

The *Williams* Court specifically and repeatedly referred to the insurance company's "total failure" to provide "the opportunity to select or reject the UIM policy limits," in order to justify its determination that the insurance policy at issue was not governed by the statutory limits of N.C. Gen. Stat. § 20-279.21(b)(4). *Id.* at 604-06, 621 S.E.2d at 646-47. This was because "[t]he statute clearly establishes that the insured must be given the initial opportunity to reject or select different policy limits." *Id.* at 605, 621 S.E.2d at 647. There is nothing in *Williams* that would support expanding its holding beyond situations where an insured was never given the opportunity to reject or select different coverage limits.

The *per se* rule suggested by defendants, that the *Williams* analysis must apply whenever an insurer does not produce a valid selection/rejection form, cannot be reconciled with our Supreme Court's holding in *Fortin*. The facts in *Fortin* clearly indicate that the insured, upon renewal, was not provided with the proper North Carolina Rate Bureau selection/rejection form, but this failure of the insurance company to provide the form did not result in an increase in UIM coverage beyond the statutory limits of N.C. Gen. Stat. § 20-279.21(b)(4). Along these same lines, the deciding factor for the *Williams* Court was not that the insured was not provided with the proper selection/rejection form; instead, the Court emphasized that the insured was not provided with *any* opportunity at all to even consider UIM coverage. As explained by the *Williams* Court:

> The statutory limitations for UIM coverage established in N.C.G.S. § 20-279.21(b)(4) take effect if the named insured does not reject UIM coverage or does not select UIM coverage limits different than the bodily injury liability coverage contained in the policy. N.C.G.S. § 20-279.21(b)(4) (2001). Here, however, the insured *was not given the opportunity to reject or select different coverage limits.*

*Id.* at 605, 621 S.E.2d at 647 (emphasis added). Therefore, the relevant inquiry in determining whether *Williams* applies is whether defendants were given the *opportunity* to reject or select different UIM coverage limits.

Whether or not defendants were provided the opportunity to reject or select different UIM coverage limits is a factual determina-

tion that is generally best resolved by a jury. The record in the instant case reveals a genuine issue of material fact as to whether plaintiff provided defendants with the opportunity to reject or select different UIM coverage limits and, therefore, summary judgment was inappropriate.

Plaintiff provided an affidavit by Ms. Bare, in which she stated she had verbally provided Mrs. Burgdoff the opportunity to reject or select different UIM coverage limits: "I specifically explained to Ms. Burgdoff that she had the opportunity to buy liability coverage and UM/UIM insurance in an amount up to $1,000,000. Ms. Burgdoff selected coverage in the amount of 100/300 for both liability and combined UM/UIM." Mrs. Burgdoff testified about this meeting at her deposition, as follows:

Q: Do you recall whether, during the course of your conversation whether there were any changes made or whether you made any changes based on any options or whether you wanted to increase any particular coverages or decrease any coverages?

A: No. *I haven't talked to them about anything like that.*

Q: You didn't go into that much detail, as you recall?

A: No.

(Emphasis added). In addition, defendants each indicated in their answers to plaintiff's interrogatories that they were not informed that they could select an amount of UIM coverage that was different from the amount of liability coverage.

This conflicting evidence creates a genuine issue of material fact as to whether defendants were given the opportunity to reject or select different UIM coverage limits when they purchased their insurance policy from plaintiff. As a result, the trial court's order granting summary judgment to plaintiff must be reversed and this case must be remanded for a jury trial on this issue.

If the jury determines that plaintiff provided defendants with an opportunity to reject or select different UIM coverage limits, then the trial court shall issue a judgment that defendants' UIM coverage limits under the Burgdoff policy were 100/300, pursuant to N.C. Gen. Stat. § 20-279.21 (b)(4). If, however, the jury determines that there was a total failure on the part of plaintiff to provide defendants the opportunity to reject or select different UIM coverage limits, the trial court shall issue a judgment, pursuant to *Williams*, that defendants' UIM coverage limits under the Burgdoff policy were $1,000,000.

Reversed and remanded.

Judges GEER and STEPHENS concur.