UNITRIN AUTO AND HOME INSURANCE COMPANY, Plaintiff v. ELRITA ANN McNEILL, INTEGON NATIONAL INSURANCE COMPANY, and PENNSYLVANIA NATIONAL MUTUAL INSURANCE COMPANY, Defendant

No. COA10-1192

(Filed 6 September 2011)

**Insurance—automobile—uninsured motorist coverage— opportunity to reject or select coverage amounts**

The trial court erred by granting summary judgment in favor of defendant Penn National and by ordering that defendant McNeill was only entitled to $100,000.00 in uninsured motorist coverage (UIM) as opposed to the $1,000,000.00 that is the upper limit of N.C.G.S. § 20-279.21(b)(4). There were genuine issues of material fact as to whether one of the policy holders was given the opportunity to reject or select differing coverage amounts of UIM.

Appeal by Elrita Ann McNeill from an order for summary judgment entered 10 May 2010 by Judge W. Russell Duke, Jr., in Forsyth County Superior Court. Heard in the Court of Appeals 11 April 2011.

*Willardson Lipscomb & Miller, LLP, by William F. Lipscomb and David A Jolly, for defendant-appellant Elrita Ann McNeill.*

*Pinto Coates Kyre & Brown, PLLC, by Deborah J. Bowers and David G. Harris, II, for defendant-appellee Pennsylvania Mutual Insurance Company.*

*Roberta B. King, for defendant-appellee, Integon National Insurance Company.*

ELMORE, Judge.

Defendant Elrita Ann McNeill (defendant McNeill) appeals from an order of summary judgment for defendant, Pennsylvania National Mutual Casualty Insurance Company (defendant Penn National), ordering that defendant McNeill was entitled to only $100,000.00 in uninsured motorist coverage (UIM) as opposed to the $1,000,000.00

that is the upper limit of N.C. Gen. Stat. § 20-279.21(b)(4). As we have concluded that there are genuine issues of material fact as to whether one of the policy holders was given the opportunity to reject or select differing coverage amounts of UIM, we reverse the decision of the trial court.

## I. Background

On 7 January 2008, defendant McNeill, driving a 1993 Ford, was injured in an accident with another driver on U.S. Highway 221, near West Jefferson. Defendant McNeill sustained substantial injuries. State Farm Mutual Automobile Insurance Company, the insurer for the other driver involved in the accident, tendered its liability limit of $30,000.00 per person on 2 February 2008 and defendant McNeill subsequently filed a claim for UIM with defendant Penn National under a policy issued to her husband, Mr. McNeill, on 27 February 2007. On 19 February 2009, plaintiff, Unitrin Auto and Home Insurance Company, filed a complaint for declaratory judgment in Forsyth County Superior Court seeking determination of the extent to which the insurance policy it had issued provided UIM to defendant McNeill, and the extent to which the other named defendants had issued auto insurance policies which imposed obligations upon them in relation to defendant McNeill and the auto accident which occurred on 7 January 2008. Defendant Penn National answered the complaint and admitted that it may have issued a policy that was applicable to the accident giving rise to this controversy consistent with the terms and conditions of its policy, which provided for UIM with a limit of $100,000.00 per person and $300,000.00 per accident. On 4 January 2010, defendant Penn National filed a motion for summary judgment under Rule 56 of the North Carolina Rules of Civil Procedure asserting that it was entitled to judgment as a matter of law that "to the extent its policy provides any UIM or other coverage for defendant McNeill, the maximum UIM coverage provided is equal to the highest limits of bodily injury liability coverage available for any one vehicle under the Penn National policy issued to Benny McNeill". In support of its motion, defendant Penn National submitted the following documents: 1) the affidavit of Roger Richardson, an insurance agent at the Miller Agency in West Jefferson who issued the policy in question; 2) the deposition of Roger Richardson; and 3) the deposition of Mr. McNeill. Defendant Penn National also submitted the pleadings in the case and all interrogatories and documents on file. In response, defendant McNeill moved to amend her counterclaim for declaratory judg-

ment to allege that the selection/rejection form submitted by defendant Penn National had not been signed by Mr. McNeill and that he had not been given an opportunity to select or reject UIM. Defendant McNeill submitted an affidavit of Mr. McNeill as well as the affidavit, curriculum vitae, and two expert reports of Haywood Starling, a certified questioned document examiner. On 10 May 2010, the trial court issued an order granting defendant Penn National's motion for summary judgment and finding that defendant McNeill was entitled to UIM in the amount of the highest limits of bodily injury liability coverage under the Penn National policy, $100,000.00 per person and $300,000.00 per accident. It is from this order that defendant McNeill appeals. Further relevant facts are developed below.

## II. Discussion

"Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quotations and citation omitted). "The evidence must be viewed in the light most favorable to the non-moving party." *Wiley v. United Parcel Service, Inc.*, 164 N.C. App. 183, 186, 594 S.E.2d 809, 811 (2004) (citation omitted). A two-part analysis is required, first, to determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact," and, second, whether "the moving party is entitled to judgment as a matter of law." *Von Viczay v. Thoms*, 140 N.C. App. 737, 738, 538 S.E.2d 629, 630 (2000) (quotations and citation omitted), *aff'd per curiam*, 353 N.C. 445, 545 S.E.2d 210-11 (2001). "[A]n issue is material if the facts alleged are such as to constitute a legal defense or are of such nature as to affect the result of the action, or if the resolution of the issue is so essential that the party against whom it is resolved may not prevail." *McNair v. Boyette*, 282 N.C. 230, 235, 192 S.E.2d 457, 460 (1972). "The party moving for summary judgment ultimately has the burden of establishing the lack of any issue of triable fact." *Edwards v. GE Lighting Sys. Inc.*, 200 N.C. App. 754, 757, 685 S.E.2d 146, 148 (2009) (citing *Spaulding v. Honeywell Int'l, Inc.*, 184 N.C. App. 317, 320, 646 S.E.2d 645, 648 (2007) (citation omitted). "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a prima facie case at trial." *Id.*

N.C. Gen. Stat. § 20-279.21(b)(4), governing the requirements for UIM in North Carolina, provided at the time of the issuing of the defendant Penn National policy in 2007 and at all times relevant to this action, that the amount of UIM coverage in any insurance policy was "not to be less than the financial responsibility limits for bodily injury liability as set forth in G.S. 20-279.5 nor greater than one million dollars ($1,000,000.00) as selected by the policy owner." N.C. Gen. Stat. § 20-279.21(b)(4) (2007). The statute continues in relevant part:

> The coverage required under this subdivision is not applicable where any insured named in the policy rejects the coverage. An insured named in the policy may select different coverage limits as provided in this subdivision. *If the named insured in the policy does not reject uninsured motorist coverage and does not select different coverage limits, the amount of uninsured motorist coverage shall be equal to the highest limit of bodily injury and property damage liability coverage for any one vehicle in the policy.* Once the option to reject the uninsured motorist coverage or to select different coverage limits is offered by the insurer, the insurer is not required to offer the option in any renewal, reinstatement, substitute, amended, altered, modified, transfer, or replacement policy unless the named insured makes a written request to exercise a different option. *The selection or rejection of uninsured motorist coverage or the failure to select or reject by a named insured is valid and binding on all insureds and vehicles under the policy.* Rejection of or selection of different coverage limits for uninsured motorist coverage for policies under the jurisdiction of the North Carolina Rate Bureau *shall be made in writing by a named insured on a form promulgated by the Bureau and approved by the Commissioner of Insurance.*

*Id.* (emphasis added).

This Court has held that where there has been

> a total failure to provide the insured with an opportunity to reject UIM coverage or select different UIM policy limits [this] violates the requirement that these choices be made by the policy owner. Such a failure should not invoke the minimum UIM coverage limits established in N.C.G.S. § 20-279.21(b)(4) and shield the insurer from additional liability.

*Williams v. Nationwide Mut'l Ins. Co.*, 174 N.C. App. 601, 605-06, 621 S.E.2d 644, 647 (2005). "[T]he relevant inquiry in determining whether *Williams* applies is whether defendants were given the opportunity to reject or select different UIM coverage limits." *Nationwide Mutual Insurance Company v. Burgdoff*, ___ N.C. App. ___, ___, 698 S.E.2d 500, 503 (2010) (quotations and citation omitted).

The central factual question in this case is whether Mr. McNeill, husband of defendant McNeill, under whose policy plaintiff claims UIM, received proper instruction regarding UIM by defendant Penn National's agent at the time of his signing up for his policy despite his name and purported signature appearing on a UIM rejection form presented by defendant Penn National. The central legal question is whether this Court's previous holding in *Williams* applies in this case and also whether defendant Penn National's production of the testimony of its agent was sufficient to entitle Penn National to judgment as a matter of law.

Defendant McNeill asserts that our decision in *Williams* applies, and that because Mr. McNeill was not provided with an opportunity to select or reject UIM coverage, the coverage limits imposed by N.C. Gen. Stat. § 20-279.21 (b)(4) do not apply. In *Williams*, this Court considered a situation in which it was stipulated that the plaintiffs in that case were not offered an opportunity to accept or reject UIM limits that were greater than the policy's liability limits. *Williams*, 174 N.C. App. at 603, 621 S.E.2d at 645. Given that situation, this Court ruled that, in order to effectuate the purposes of the statute in protecting innocent victims of automobile accidents from financially irresponsible motorists, it was appropriate to disregard the limitations of liability imposed by N.C. Gen. Stat. § 20-279.21(b)(4) and mandate coverage to the statutory maximum of $1,000,000.00. *Williams*, 174 N.C. App. at 605-06, 621 S.E.2d at 647.

Likewise, in *Burgdoff*, following the holding of *Williams*, we considered the question of whether the coverage limits of N.C. Gen. Stat. § 20-279.21(b)(4) should apply where the policy holders never completed a UIM selection/rejection form and where the plaintiff had provided testimony that she had not talked to the defendant's agents about UIM coverage. *Nationwide Mut. Ins. Co. v. Burgdoff*, ___ N.C. App. ___, ___, 698 S.E.2d 500, 503-04 (2010). In that case, we concluded that a genuine issue of material fact did exist as to whether the plaintiffs were offered an opportunity to accept or reject UIM coverage. *Id.* Indeed, we observed, "[w]hether or not [the] defendants were

provided the opportunity to reject or select different UIM coverage limits is a factual determination that is generally best resolved by a jury." *Id.* at S.E.2d at 503.

The following evidence was presented in relation to the summary judgment motion presented in this case. Defendant Penn National presented a UIM rejection form with the purported signature of Mr. McNeill. Defendant Penn National also presented the affidavit and deposition of its agent, Roger Richardson, who averred in his affidavit:

> 6. On February 24, 2007, I specifically recall that Benny McNeill came to the Miller Insurance Agency office; and that I went over the insurance paperwork with Mr. McNeill for the Penn National policy. I specifically recall going over the selection/rejection form for uninsured/underinsured motorists coverage, because the amount of the premium was dependent upon his selection of coverage.

> 7. Having been an insurance agent for almost thirty-seven [*sic*] with The Miller Insurance Agency, and licensed as a Penn National agent for thirty-four years, it is my customary practice and procedure to obtain all required signatures by policyholders for whom The Miller Insurance Agency obtains insurance coverage. It is my practice to sign documents only after the customer has signed. The procedures I used in connection with obtaining coverage for Benny T. McNeill's owned autos were no different than my normal and customary procedures that I have used throughout my career as a licensed insurance agent. I have examined the selection/rejection form attached to Mr. McNeill's policy, and I recognize my signature on that document.

Defendant Penn National also offered the deposition testimony of Mr. McNeill. At his deposition (and after having denied any memory of having the selection/rejection form explained to him) Mr. McNeill gave the following testimony regarding whether he had signed the UIM selection/rejection form relating to the Penn National policy and whether anyone at Miller Insurance agency had discussed the choice of UIM and specifically his purported designation on the UIM selection/rejection form with him:

> Q.   Does Number 10 also appear to contain your signature?

> A.   It says Benny T. McNeill on it.

> Q.   Is that your signature?

UNITRIN AUTO & HOME INS. CO. v. McNEILL

[215 N.C. App. 465 (2011)]

A. It don't—sure don't look like that one.

Q. Well, I didn't ask what it looked like. I asked if it's your signature.

A. And I said it looks like Benny T. McNeill.

Q. Okay, the answer—

A. —And—and I—it doesn't look like my signa—it doesn't look like my signature.

. . .

A. I'm just saying it doesn't look like my signature.

Q. Who would have—have any idea who would have signed that with your name if it wasn't you?

A. No, I don't. No, I don't.

. . .

Q. Can you testify sitting here today as you are, under oath, that the signature on Number 10 is absolutely not your signature?

A. Well, it says Benny T. McNeill. That's the only thing I know.

Q. Okay. Have you ever signed your signature that looked—to look like that?

A. It just don't look like my signature.

Q. Okay. Well, let's back up just a little bit. People don't sign their name exactly the same way every time, and my question is could that be your signature or is that just so different that it just couldn't be your signature?

A. It could be my signature.

Q. It could be.

A. Yeah.

Q. Do you have any recollection of that document?

A. No I don't.

Q. All right. If someone at the Miller Agency were to say that the document was—that you were there, that that document

was shown to you, explained to you, and signed, would there be any reason that you would not believe that?

A.   No.

Following that deposition, defendant McNeill produced an affidavit from Mr. McNeill which made the following relevant assertions:

> I understand that the paper attached hereto as Exhibit 1 has been identified in this case as a selection/rejection form regarding my Penn National policy. I did not sign this paper and did not authorize anyone at Miller Insurance Agency to sign it for me. The signature on this paper, which says "Benny T. McNeill," is not my signature.

> A poor quality fax copy of this paper was shown to me during my deposition on June 9, 2009. In response to repeated questions by counsel for Unitrin, I stated at least four (4) times during my deposition that my signature on this paper does not look like my signature. I understand that when counsel for Unitrin asked me (page 39) if someone at the Miller Agency said that this document was shown to me, explained to me and signed, would there be any reason I would not believe that, and that I responded "no". Since my deposition was taken, I looked at this signature further and have also looked at the attached Exhibit 1, which is a better copy of this paper. I am now certain I did not sign this selection/rejection from [sic] and if anyone at the Miller Agency says I signed it, they are mistaken.

In addition to the preceding, defendant McNeill presented evidence in the form of an expert report by Haywood Starling, a forensic document examiner, who determined, based upon his examination of the questioned signature, that:

> IT IS MY OPINION TO A REASONABLE DEGREE OF CERTAINTY THAT BENNY T. McNEILL, AS REPESENTED BY THE K-1 KNOWN SIGNATURES IS NOT IDENTIFIABLE AS THE AUTHOR OF THE Q-2 QUESTIONED SIGNATURE.

> The dissimilarities noted include repetitive letter form dissimilarities and line quality.

> The line quality in the Q-2 signatures bears evidence of a slowly drawn writing with evidence of hesitation and restraint while the line quality in each of the K-1 known signatures reveal lines that are free and flowing without evidence of hesitation or restraint.

From these findings, Haywood Starling testified by affidavit that he "concluded that Benny T. McNeill was not the author of the questioned signature dated 2/24/2007 on the selection/rejection form."

A genuine issue of material fact exists when properly contested facts "are of such nature as to affect the result of the action." *Boyette*, 282 N.C. at 235, 192 S.E.2d at 460. As this Court has said in *Burgdoff* the central inquiry in this case is whether the McNeills were offered an opportunity to accept or reject UIM limits. *Burgdoff*, ___ N.C. App. at ___, 698 S.E.2d at 503. Defendant Penn National argues and we agree that "a nonmoving party may not contradict [its own] earlier sworn testimony in an effort to defeat a motion for summary judgment[,]" and points to *Allstate Ins. Co. v. Lahoud*, 167 N.C. App. 205, 211-12, 605 S.E.2d 180, 185 (2004), in support of the proposition. Though we agree with the premise, we do not agree that it applies in this case. In *Lahoud*, the question presented was whether the plaintiff would be required to provide insurance coverage for actions undertaken by the defendant in relation to actions which gave rise to charges of taking indecent liberties with a child. *Id.* at 206-07, 605 S.E.2d at 182. The defendant pled guilty to the charge. *Id.* The victim's family subsequently sued Lahoud in a civil action alleging various causes of action. *Id.* Lahoud asserted that Allstate had a duty to defend him in the civil action. *Id.* at 207, 605 S.E.2d at 185. Allstate filed a declaratory judgment action for determination of the extent to which it was required to provide coverage, and the trial court granted summary judgment in their favor. *Id.* at 207, 605 S.E.2d at 182. The issue of whether coverage was due under Allstate's policy centered on whether the defendant's actions were "intentionally harmful." *Id.* at 211, 605 S.E.2d at 184. This Court, found that Lahoud's guilty plea to indecent liberties with a minor was in direct contradiction to his affidavit, and therefore, his affidavit "[could] not create a genuine issue of material fact because he submitted his own affidavit . . . ." *Id.* at 211, 605 S.E.2d at 185.

Reading the evidence in the light most favorable to the nonmoving party, we find no direct contradiction in the testimony of Mr. McNeill. Looking to his testimony dealing with his opportunity to accept or reject UIM, Mr. McNeill responded to the question of whether anyone had reviewed the selection/rejection form presented to him with an assertion that he did not remember it being explained. He also responded repeatedly to the question of whether his signature appeared on the UIM selection/rejection form with the assertion that the signature that appeared there did not look like his signature.

However, he admitted that "[i]t could be [his] signature" after being asked "could that be your signature or is that just so different that it just couldn't be your signature[.]" That statement is not an admission that the signature is his. Having not given a definite answer to either question, the assertions in Mr. McNeill's affidavit, explaining that upon further reflection that he had determined that it was not his signature and that he did not have UIM explained, are not contradictions, but explanations of his former testimony. Mr. McNeill's affidavit appears to us not to contradict, but to explain his former testimony. Therefore, we conclude that Mr. McNeill is not barred from using his own affidavit to raise an issue of material fact as to the central question in the analysis of whether the UIM limits should apply.

Further, taking *Lahoud* as our touchstone, the majority in that case found that the defendant could defeat summary judgment "by producing evidence other than his own affidavit or deposition contradicting his own testimony." *Lahoud*, 167 N.C. App. at 211-12, 605 S.E.2d at 185 (citation omitted); *See also Hubbard v. Fewell*, 170 N.C. App. 680, 613 S.E.2d 58 (2005) (distinguishing *Lahoud* and finding the affidavit of the nonmoving party in that case, paired with that of an uninterested third party, was sufficient to raise a genuine issue of material fact even in contradiction of the non-movant's prior testimony). Here, defendant McNeill produced the affidavits of Haywood Starling, a contested document expert, who found that Mr. McNeill was not the author of the signature on the UIM selection/rejection. This evidence, coupled with Mr. McNeill's deposition testimony that he did not remember the selection/rejection form being explained to him, presents a genuine issue of material fact as to whether Mr. McNeill had been offered the opportunity to accept or reject UIM coverage. Therefore, summary judgment in this instance was improperly granted. We reverse the decision of the trial court and remand the case for further proceedings not inconsistent with this opinion.

Reversed and Remanded.

Chief Judge MARTIN and Judge GEER concur.